UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| CATHRYN J. BECK,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CONCORD INSURANCE CO. and<br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE CO.,<br><br>　　　　　Defendants. | :<br>:<br>:<br>:  Civil No. 1:09-cv-207-jgm<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR
RECONSIDERATION OF ORDER GRANTING MOTION TO COMPEL
PSYCHIATRIC EXAMINATION
(Doc. 50.)

　　　Plaintiff Cathryn Beck moves for reconsideration of this Court's September 12, 2011 Order (Doc. 48) compelling her to submit to an independent psychiatric examination. For the reasons that follow, her motion is denied and she will be required to submit to a psychiatric examination under Federal Rule of Civil Procedure 35.

I.　　BACKGROUND

　　　Ms. Beck, who is 51 years old, has brought an uninsured motorist claim, alleging she was injured on September 10, 2003, when an unidentified driver rear-ended the automobile in which she was a passenger. She alleges she sustained a neck injury, resulting in neck pain, occipital head pain, and disequilibrium, and claims that as of June 1, 2006, two and half years after the accident, she was entirely disabled and unable to work because of the injury. The driver, who was in the car with Ms. Beck when the

accident occurred, has testified that the collision was a "minimal tapping" and she found it hard to believe there was any injury from it.  (Doc. 42-2, LaFramboise Dep., pp. 43, 44, 77.)

Defendants argue her claimed injury and certain discovery has placed into controversy whether her symptoms are caused or aggravated by psychological factors not related to the car accident.  Defendants, in support of their first motion to compel an examination, submitted evidence that Ms. Beck's treating physicians noted, in records contemporaneous with the claimed onset of disability, that Plaintiff was being harassed at work, and as a result she was emotionally distraught, and that the symptoms she presented were not the result of a "medical issue."  (Dr. Fifield Medical Record, Doc. 42-13.)  Another treating physician, Dr. Cope, also noted Ms. Beck claimed she was harassed at work and that he was not comfortable relating her symptoms to the car accident, despite her request that he do so.  (Dr. Cope Medical Records, Docs. 42-9, 42-10.)  Neither of these treating physicians is a psychologist or psychiatrist.

In February 2010, Ms. Beck was examined by Dr. Janis Peyser, a neuropsychologist who specializes in mental disorders resulting from trauma.  At the time, Ms. Beck claimed she suffered from memory and concentration difficulties caused by the September 2003 accident.  Dr. Peyser concluded Ms. Beck's complaints were psychological:

> There is really no evidence that Mrs. Beck sustained a head injury of any significance in the car accident.  The natural history of her memory symptoms is also inconsistent with head injury. . . . Overall, it appears that her cognitive complaints are psychological in origin.

(Dr. Peyser Evaluation of Feb. 25, 2010, Ex. V, Def's. Mtn. to Compel, Doc 42-22.)

Ms. Beck, in support of her motion to reconsider, points to the recent deposition testimony from her treating physicians indicating that their earlier assessments, which concluded her complaints were due to anxiety or distress or somatoform disorder, regarded complaints not related to the accident.  For instance, Dr. Fifield, a primary care physician, had noted Beck's dizziness was of "unclear etiology," but at the recent deposition stated that his notes describing functional symptoms (i.e., symptoms that are not physiologic or physical in origin) regarded her claims of drooling, chest pulling sensations, and numbness in her feet. (Dr. Fifield Dep. at 110, Doc. 42-20.)

Dr. Cope, also a primary care provider, had written in 2005 that her problems "are psychophysiologic and actually due to anxiety," (Dr. Cope Medical Records, Docs. 42-9, 42-10), but explained at deposition that the problems due to anxiety were thigh pain and arm tingling, not necessarily the neck, occipital pain, or dizziness claimed from the accident. (Dr. Cope Dep. at 32, Doc. 50-2 at 2.)  He did acknowledge that anxiety was having some effect upon her physical complaints.  (Id. at 40-41; Doc. 50-2 at 5-6.)

A neurologist, Dr. Dulaney, had written in 2006 that swaying symptoms were functional in nature, and that whiplash could not account for the degree of her symptoms, but upon being deposed in 2011, stated that while he would still assess the swaying as functional, that assessment did not include her symptoms of dizziness or disequilibrium, and indicated she may have swayed to compensate for them.  (Dr. Dulaney Dep. at 56-57, Doc. 50-1 at 5-6.)  He also stated that he at no point thought Ms. Beck had a mental illness, but conceded he was not a psychologist or psychiatrist, and that her neck pain was not corroborated.  He found no neurologic abnormality to explain the claimed accident injury.  (Id. at 57 and 63, Doc. 50-1 at 6 and 9.)

Dr. Holm, another treating physician, stated in his recent deposition that he did not consider whether emotional factors played a role in her symptoms, because he was "not qualified to evaluate people for that," but said her symptoms were consistent with occipital neuralgia, where the occipital nerve may be inflamed by muscle spasms. (Dr. Holm Dep., Doc. 50-4.)

Dr. Bucksbaum, an independent medical expert hired by Ms. Beck, testified that in his view psychiatric factors were not at work, but he could not rule out that psychiatric or psychological factors did affect Ms. Beck's clinical condition. (Dr. Bucksbaum Dep. at 6, Doc. 50-6 at 3.) However, when asked a series of questions designed to elicit whether Ms. Beck satisfied a list of criteria for somatoform disorder, he answered that each was satisfied. (Id. at 5, Doc. 50-6 at 2.)

II.     DISCUSSION

Rule 35 authorizes a trial court to order a psychiatric examination upon a finding that a party's mental condition is in controversy and good cause for the examination has been shown. Fed. R. Civ. P. 35. The Court recognizes that ordering a psychiatric examination may be intrusive and burdensome, however, it is called for in this case.

Here, the Defendants have sufficiently demonstrated, with an affirmative showing of medical records and deposition testimony cited in opposition to the motion to reconsider, particularly those of Drs. Cope and Peyser, that Ms. Beck's psychological condition is genuinely in controversy. See Pozefsky v. Baxter Healthcare Corp., 194 F.R.D. 438, 439 (compelling psychiatric examination even though plaintiff withdrew her claim of emotional distress, because where there was evidence her psychiatric condition could be the source of her physical symptoms, a psychiatric exam was warranted); see

4

also <u>Gepner v. Fujicolor Processing, Inc.</u>, 637 N.W.2d 681, 690 (N.D. 2001) (noting the Supreme Court in <u>Schlagenhaug v. Holder</u>, 379 U.S. 104, 118 (1964), recognized a defendant may place an opposing party's mental condition in controversy by independent evidence when it stated Rule 35's requirements could be met by "an affirmative showing *by the movant* that each condition as to which the examination is sought is really and genuinely in controversy") (emphasis added).  There is evidence that Ms. Beck experienced complaints, at the time she alleged the onset of her disability, that have a non-physical component, and the possibility that these complaints were psychological calls into question the physiological basis for the symptoms she relates to the accident.  Dr. Bucksbaum conceded that each of the criteria for diagnosis of a somatization disorder is met in Ms. Beck's case.

Good cause exists for ordering the examination because it will adduce whether Ms. Beck suffers from any psychiatric or psychological disorder which may be an alternative cause of her symptoms.  Without an exam, defendants will be limited to cross examining physicians who are not experts in the field.  There are no other means of determining whether Ms. Beck's symptoms are psychological.

The question of whether Ms. Beck's claimed injuries were caused by the accident, or are attributable to psychological factors, will be relevant to damages.

III.     <u>CONCLUSION</u>

Therefore, Plaintiff's Motion for Reconsideration (Doc. 50) is DENIED.  Plaintiff is ORDERED to submit to a psychiatric examination by Dr. Albert M. Drukteinis at a time and place agreed to by the parties.  The examination shall not exceed two hours.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 19th day of December, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge